United States District Court
District of Minnesota
Civil No. 19-2077(DSD/KMM)

Aimee L. Smith,

    Plaintiff,

v.                                          ORDER

Maryville University of Saint Louis,

    Defendant.

    Joel D. Van Nurden, Esq. and Van Nurden Law, PLLC, 120 South Sixth Street, Suite 1515, Minneapolis, MN 55402, counsel for plaintiff.

    Michael Thomas Raupp, Esq. and Husch Blackwell, LLP, 4801 Main Street, Suite 1000, Kansas City, MO 64112 and Peter D. Stiteler and Fox Rothschild LLP, 222 South Ninth Street, Suite 2000, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion to dismiss by defendant Maryville University of Saint Louis (Maryville). Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted.

**BACKGOUND**

This dispute arises out of an alleged breach of contract between Maryville and plaintiff Aimee L. Smith. Maryville is a Missouri non-profit corporation with its registered offices and campus located in St. Louis, Missouri. Compl. ¶ 2; see Smith Decl. ¶ 6. Maryville provides a 100% online nursing program for off-

campus students, which it advertises via both Google and its website. Smith Decl. Exs. 1, 2. The four-year course is conducted through the Canvas Learning Management Platform (Canvas), an online platform where professors and students communicate and engage in real-time learning sessions. Smith Decl. ¶ 8. Maryville provides its online students with a unique password and username to access information on Canvas. Id. ¶ 7.

In late 2014 or early 2015, Smith, a Minnesota resident, contacted Maryville via its website to inquire about its Master of Nursing Program. Id. ¶ 2. Smith subsequently enrolled in the program, and successfully completed the first five semesters of the six-semester program. Compl. ¶¶ 4-5. In her final semester, Smith was required to take a practicum so she could gain hands-on experience and for which she would log her hours via Canvas. See id. ¶¶ 6-9. At the end of the practicum, the supervising practitioner would validate Smith's hours and provide Maryville with an evaluation of her work. Id. ¶ 9.

In late April 2018, on finishing the semester, Smith sent the practitioner a link to approve her hours and provide an evaluation. Id. ¶¶ 12-13. Although it appears the practitioner approved some of Smith's hours, he did not provide an evaluation of her work. Id. ¶¶ 14-17. Shortly thereafter, Smith held a Skype meeting with two of her professors to discuss alleged discrepancies between the hours approved by the practitioner and those Smith logged via

Canvas.  Id. ¶ 18.  After the meeting, Smith received a letter from one of Maryville's academic deans informing her that she would receive a failing grade for her practicum.  Id. ¶ 19.  The letter informed Smith that she could appeal the failing grade, which she promptly did.  Id. ¶¶ 19–20.

In late May 2018, the academic dean emailed Smith to inform her that her appeal was denied and instructed her to contact Maryville's associate academic vice president if she believed she had evidence to support her appeal.  Id. ¶ 21. Smith contacted the vice president to request an appeal, and received a letter back affirming the failing grade for her practicum.  Id. ¶¶ 22–23.  That same day, Smith received a letter from the director of her program informing her that she was dismissed from the program for falsifying her hours in violation of Maryville's academic integrity policy.  Id. ¶ 24.  Though ultimately unsuccessful, Smith communicated via email with various Maryville staff members in order to challenge her dismissal.  Id. ¶ 25.

On its website, Maryville provides a student handbook that contains a policy regarding academic integrity.  Id. ¶ 33; Smith Decl. ¶ 9.  The handbook provides procedures for both students and Maryville to follow in the event a student is accused of violating the academic integrity policy.  Compl. ¶ 33.  In June 2019, Smith filed suit against Maryville in Minnesota state court, alleging that the handbook forms a contract between Maryville and its

students, and that Maryville breached the contract by not following the procedures laid out in the handbook when it dismissed her for violating the academic integrity policy. Id. ¶¶ 34–38. Maryville timely removed to federal court, and now moves to dismiss for lack of personal jurisdiction.

**DISCUSSION**

**I.  Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). In the absence of an evidentiary hearing, a court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). The court may look to affidavits, declarations, and exhibits to determine whether personal jurisdiction exists. Romak USA, Inc. v. Rich, 384 F.3d 979, 983 (8th Cir. 2004).

A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak, 384 F.3d at 984 (citation and internal quotation marks omitted). Because

the Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," the court need only consider due process requirements.  See Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).

To satisfy due process, a defendant must purposefully establish "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592 (8th Cir. 2011) (citation omitted). "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there...." Coen, 509 F.3d at 905 (citation and internal quotation marks omitted).  For a defendant to reasonably anticipate being haled into court in a forum state, the defendant's contacts with the forum state must show that the defendant "purposefully avail[ed] itself of the privilege of conducting activities" in that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

The Eighth Circuit considers five factors in determining whether personal jurisdiction is present: "(1) the nature and quality of defendant's contacts with the forum state; (2) [the] quantity of contacts; (3) [the] source and connection of the cause of action with those contacts; and to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the

parties." Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995) (citations omitted). The first three factors are primary, and the third factor determines whether jurisdiction is general or specific. Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (citations omitted). A forum state has specific jurisdiction when the cause of action "arise[s] out of" or "relate[s] to" a defendant's contacts with that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citation and internal quotation marks omitted).

Smith argues that the court has specific jurisdiction[1] over Maryville based on its following contacts with Minnesota: (1) its establishment of an Internet presence in Minnesota, including the purchase of advertisements that Smith alleges were directed at Minnesota and its provision of a unique username and password for Smith to use on Canvas; (2) the contract it formed with Smith via its online student handbook; and (3) the letters, emails, and Skype

---

[1] Although Smith alleges the court has specific personal jurisdiction, she does not waive the argument that general jurisdiction may exist. For the court to exercise general personal jurisdiction over Maryville, its contacts with Minnesota must be "continuous and systematic" so as to render it essentially "at home" in Minnesota. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923–24 (2011). A corporation is "at home" in its state of incorporation or in the state of its principal place of business. Id. at 924. Maryville is a Missouri nonprofit corporation that appears to have its principal place of business in Missouri. As such, Maryville is at home in Missouri, and the court cannot exercise general personal jurisdiction over it in Minnesota.

6

call exchanged between Smith and Maryville with regard to Smith's alleged violation of the academic integrity policy.

**II. Maryville's Website, Ads, and Canvas Portal**

For the court to exercise specific personal jurisdiction over Maryville, Smith's cause of action must "arise out of" or "relate to" Maryville's contacts with Minnesota. See Burger King Corp., 471 U.S. at 472. Despite Smith's argument to the contrary, her cause of action does not relate to or arise out of all of Maryville's alleged contacts with Minnesota. Smith's cause of action is for breach of contract, a claim that arises out of the alleged contract formed between her and Maryville via the student handbook. Further, Smith's cause of action relates to the emails, letters, and Skype call exchanged between her and Maryville, as these contacts form the basis for Smith's claim that Maryville breached the contract by not following the procedures laid out in the handbook.

Smith's breach of contract claim does not, however, arise out of or relate to Maryville's general Internet presence in Minnesota, its alleged direction of online advertisements toward Minnesota, or its provision of a Canvas username and password to her. Because Smith's cause of action does not arise out of these contacts, they cannot form the basis for specific personal jurisdiction.

Even if Smith's cause of action did arise from the Internet contacts, they are insufficient to show that Maryville has

purposefully availed itself of the forum. "When considering the sufficiency of internet contacts under a specific jurisdiction analysis, [the Eighth Circuit has] found the Zippo test instructive." Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010) (citation omitted). The Zippo test applies a sliding scale to measure the interactivity of a website and, thus, the likelihood that the website confers personal jurisdiction. See id.; see also Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Websites allowing things like "active contract formation and [the] repeated transmission of computer files" are on the specific jurisdiction end of the sliding scale. Johnson, 614 F.3d at 796. Websites allowing the "mere posting of information" are on the other end of the scale. Id. (citation omitted).

Smith claims that the online interactions between herself and Maryville fall on the specific personal jurisdiction end of the Zippo scale, and therefore personal jurisdiction is proper. Smith cites two cases in support of this argument. In both cases, the schools provided access to an interactive website similar to Canvas. See Perrow v. Grand Canyon Educ., Inc., No. 09–670, 2010 WL 271298, at *4 (S.D. Ohio Jan. 15, 2010); Watiti v. Walden Univ., No. 07–4782, 2008 WL 2280932, at *1 (D.N.J. May 30, 2008). In Perrow, however, the court held that the university had purposefully availed itself of the forum after finding that it had

actively recruited over 1,000 online students living in the forum state. Perrow, 2010 WL 271298, at *4–5. The court in Watiti likewise found, as a "threshold matter" to its holding that the university had purposefully availed itself of the forum, that the university "specifically recruited [forum] residents for enrollment," and that "it advertised in the [forum and] ... engaged in pre-enrollment sessions [in] the state ...." Watiti, 2008 WL 2280932, at *8.

By contrast, Smith does not allege that Maryville had multiple online students from Minnesota or that Maryville actively recruited students in Minnesota. To the contrary, Smith states that she reached out to Maryville to inquire about its program and to enroll. And although Smith alleges that Maryville directed its advertising at Minnesota, her declaration and exhibits do not support that statement. Rather, the ads referenced by Smith appear to be part of a generic national advertising campaign, not one specifically directed at Minnesota. See Smith Decl. Exs. 1, 2. Such a campaign does not show that Maryville purposefully availed itself of the forum state. See Rilley v. MoneyMutual, LLC, 884 N.W.2d 321, 335 (Minn. 2016) (exercising specific personal jurisdiction where the plaintiff showed that some of defendant's ads were specifically calibrated to reach Minnesota consumers, but holding that defendant's national advertising campaign was not a relevant contact for the exercise of personal jurisdiction).

9

Therefore, Maryville cannot be said to have purposefully availed itself of the forum as the schools in Perrow and Watiti did.

Accordingly, even if Smith's cause of action arose from Maryville's Internet contacts, those contacts are not sufficient to show that Maryville purposefully availed itself of the forum.

**III. The Student Handbook Contract and the Letters, Emails, and Skype Call**

Although Smith's cause of action arises out of the alleged contract and letters, emails, and Skype call with Maryville, the court is unconvinced that those contacts show that Maryville has purposefully availed itself of the forum.

A contract between a plaintiff and an out-of-state defendant is not, in and of itself, sufficient to establish specific personal jurisdiction over the defendant in the forum state. Burger King Corp., 471 U.S. at 478 -79; see also K-V- Pharm., 648 F.3d at 593. Nor are letters or other communications sent in connection with the contract. Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 523 (8th Cir. 1996). Rather, the court must consider those communications along with the parties' prior negotiations, the contract's future consequences, the terms of the contract, and the parties' actual course of dealing in determining whether the contract and the communications establish that the defendant purposefully availed itself of the forum. Burger King Corp., 471 U.S. at 479; see also K-V Pharm., 648 F.3d at 593.

In K-V Pharmaceuticals, the court deemed the following contacts, among others, sufficient to show that the defendant "agreed to engage in substantial activity in [the forum]" and therefore purposefully availed itself of the privilege of doing business in Missouri, the forum state: (1) the exchange of numerous communications between the parties both during contract negotiation and during performance of the contract; (2) the involvement of over 20 of the defendant's employees in the contract negotiations; (3) a meeting in Missouri to renegotiate the contract; (4) both the contract's calling for and the making of significant payments pursuant to it; and (5) the contract's inclusion of a Missouri choice-of-law provision. 648 F.3d at 593–95. Conversely, in Digi-Tel Holdings, the court held that numerous letters, phone calls, and faxes sent by defendant to the forum state; the contract's inclusion of a forum-state choice-of-law provision; and the defendant's sending of sample products to the plaintiff in the forum state did not rise to the level required to show that the defendant purposefully availed itself of the privilege of doing business in the forum, and thus specific personal jurisdiction did not exist. 89 F.3d at 523.

Here, there were no active contract negotiations between the parties, as the alleged contract is implicit in the student handbook posted on Maryville's website for all of its students to see. The contract does not call for any payments to be made, nor

11

does it contemplate any performance in Minnesota. Further, the contract does not call for "significant contacts [between the parties] over the life of the contract." K-V Pharm., 648 F.3d 588. Rather, it calls for a limited number of communications to be made between the parties in the event a dispute arises over the academic integrity policy. Considering the contract and the letters, emails, and Skype call between Maryville and Smith together, those contacts are neither of the "quality and nature" nor the "quantity" necessary to show that Maryville purposefully availed itself of the privilege of doing business in Minnesota.

Finally, the fourth and fifth factors — Minnesota's interest in providing a forum for its residents and the convenience of the parties — do not tip the balance toward the exercise of specific personal jurisdiction here. Although Minnesota has an interest in providing a forum for Smith to adjudicate her claims, see Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997), it appears that Minnesota may be an inconvenient forum because all of the witnesses except Smith are located outside of the state. Given that the nature, quality, and quantity of Maryville's contacts with Minnesota do not show its purposeful availment of the forum, and the fourth and fifth factors do not weigh in favor of exercising personal jurisdiction, the court lacks specific personal jurisdiction over Maryville.

12

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss [ECF No. 11] is granted; and

2. The action is dismissed without prejudice.


Dated: November 12, 2019

s/David S. Doty
David S. Doty, Judge
United States District Court